The next case this morning is 523-0098, People v. Aldridge. Arguing for the appellant is Daniel Mallon. Arguing for the appellate is Aaron Williams. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. We're looking forward to your arguments. We apologize, Courtney says she usually gives you a little five-minute notice when you're coming in, but the case before you had a computer crash, so right as we were starting, and so we put them on the back burner and jumped you up ahead, so appreciate you being ready to go. Arguing for the appellant is Mr. Mallon. Mr. Mallon, are you ready to proceed? Yes, yes, your honor, yes. We are familiar with the briefs and the facts, so if you would just jump right into the argument, that would be appreciated. Absolutely, your honor. Yeah, may it please the court, again, my name is Daniel Mallon. I'm with the Office of the State Appellate Defender, and I represent Mr. Denzel Aldridge. I plan on just focusing on the first issue we raised in our briefs, the Krenkel issue, but I will, of course, be happy to answer any other questions on the second issue if this court pleases. As your honor mentioned, you're aware of the facts. My client, in a pro se motion, he alleged that his counsel was ineffective for failing to present the testimony of multiple witnesses that would have corroborated his version of events. First, he claimed Tavaris Mitchell, who was actually acquitted as a co-defendant in this case, would have verified my client's testimony as to what occurred before the shooting here. In a preliminary Krenkel inquiry, trial counsel indicated that he did speak to Mitchell, and trial counsel actually agreed that he was willing to be a witness, and there was no clear explanation as to why counsel did not present his testimony. Counsel's reasoning for failing to present this potential exonerating testimony was just unclear during the preliminary inquiry, which we believe necessitated further evidentiary hearing to determine exactly what he would have testified to and why counsel didn't present his testimony. My client identified another witness, Percy Freeman, and noted that Freeman testified at another co-defendant's trial, and that co-defendant was acquitted. It was just really unclear why this witness's testimony was not presented, and we didn't have a clear reasoning for why trial counsel didn't present his testimony. My client alleged that his attorney was ineffective for failing to call another witness, Tariq Wilson, who was involved in the events. He actually submitted an affidavit in his pro se motion, attached to his pro se motion, where Wilson attested that my client had no plans to get in any sort of confrontation that day. Wilson attested that he was never contacted by trial counsel and the affidavit contradicts trial counsel's statements at the preliminary Crankville inquiry, and I think that shows why an evidentiary hearing was necessary in this case. My client identified another witness, Micah Hatcher, would have corroborated my client's account of what occurred. Counsel at the inquiry speculated that he would have asserted a Fifth Amendment right. We just don't know that at this stage, and these are the kind of factual matters that should be sorted out at an evidentiary hearing, and it's exactly what Crankville provides. One more witness, Alexis King. She was in a car. She was in the front of the store and would have provided statements that, according to my client, contradicted the state's theory of the case. Perhaps it isn't quite clear what the testimony would have amounted to or why counsel decided not to present these witnesses, but at the very least, I think the relief we're asking here for is somewhat minimal. We're just asking for an evidentiary hearing to sort out these factual matters. How do you overcome the strong presumption of trial strategy here? I think at this stage, I don't know if it's a strong presumption of trial strategy. I think at this stage in a Crankville proceeding, it's a matter of factual findings. Of course, there's a strong presumption in the Strickland analysis as to ineffectiveness, but what we're asking for is just, can we just get an evidentiary hearing and hear what the witnesses potentially would have testified to and get a clearer understanding of why trial counsel didn't call these witnesses? And then after- Didn't trial counsel indicate to the court that he did not think the witnesses would have been helpful to the case? Yes, Your Honor. But my reading of the record, our reading of the record is, his answers were somewhat vague and speculative. Sometimes he didn't even really seem to recall what the witnesses would have testified to, didn't recall what the witnesses testified to. And I think all we're asking for is just further proceedings. Can we get these witnesses to testify, getting a clear idea of what they would have testified to, how they could have potentially benefited my client and give the trial court discretion after having a full evidentiary hearing as to whether or not trial counsel was possibly neglectful? One or two of the cases of the witnesses, my understanding was the attorney just stated that he thought their testimony would have been in conflict. There was video of this crime. He thought their testimony would be in conflict with the video and therefore not helpful. Is that not correct? I felt that, I felt like one of the key, there was no sound on the video. And I think these witnesses, I mean, there's no dispute that my client did end up shooting the decedent. I mean, his defense was self-defense and the witnesses were going to testify about self-defense, but there was no question that the decedent had a gun also. That wasn't even in dispute really, was it? Correct, yes. And so he had a gun and he was shooting the decedent. Correct, the decedent had a gun. And I think these witnesses could have potentially provided context as to what led to this shooting. Is that the test that could have potentially provided? Yes, well, I think that's the test of where to get to pass the preliminary crankle inquiry. But it's just as Kate said, when you have the deference to trial strategy, I'm not sure it could have possibly provided or could have potentially provided overcomes that. I don't think that determination can be made unless we hear what the witnesses would have testified to. And again, that's all we're asking for is just put these witnesses on the stand. And again, I think it's a key fact that these witnesses testified at co-defendants trial and one of the co-defendants was acquitted. I think that's strong proof that these witnesses had potential exculpatory testimony from a client. The co-defendants weren't exactly in the same situation. You have videos showing your client shooting the guy in the head. The others, you've got to prove accomplice or it's a little different standard and a little different proof, it seems. Correct, your honor, yes. We'll acknowledge that. Nevertheless- Let me ask you this with regard to the crankle, what about the deference to trial? What about the fact that the court did not appoint other counsel to present those claims? Is that required in this case or? We believe it is, yes, your honor. That's all we're asking. And why is that? To have, well, my client filed a pro se motion. And just to have counsel flush out factual matters as to whether or not what these witnesses would have testified to. You don't believe the statements by the attorney who was trial attorney, his statements as to he was aware of what the witnesses were going to testify and did not think that would be helpful given the video. You don't think that's sufficient? I'm sorry, I'm sorry. Can you repeat the question? You don't think the attorney, the trial attorney saying what he was aware of and that it was a matter of trial strategy, you think, how do you think a second counsel would have made a difference? What would they have shown that- I'm sorry, I think counsel would have been able to flush out the claims a little better. I think you, I think it's, I think my client should have been appointed counsel, present the witnesses, try and present exactly what they would have testified to. And then be able to examine counsel a little further as to why exactly he didn't call these witnesses. But didn't he give a reason for why he didn't call each of the witnesses? It appears to me that he had a reason for each and every witness that he didn't call. Based on our reading of the record, I found counsel's reasons for not calling these witnesses was a little bit vague, speculative. I mean, one witness, he speculated that they might call the Fifth Amendment rights and he just, it wouldn't be helpful. I think it should be flushed out a little further in evidentiary hearing. And I see my time is up, your honors. Thank you. Other questions, Justice Cates? No. Justice Shulman? No. All right, thank you. Thank you very much. You'll be given a chance for rebuttal in a moment. Thank you very much. Williams, you're ready to proceed? Yes, your honor. All right, you may do so. Good morning, your honors, counsel. Thank you, may it please the court. Aaron Williams from the attorney general's office on behalf of the people. So- Let me jump right in, before you even get rolling, but doesn't seem to be better practice for the judge to appoint other counsel to present these claims rather than relying the attorney who's alleged to have been maybe a negligent? No, I wouldn't say that. The Illinois Supreme Court has recognized a number of times that at the preliminary crankle stage, it is the trial court's role to weed out frivolous claims of ineffective assistance of counsel, and that where there is no basis to conclude that there's possible neglect, it's an inefficient use of resources to appoint counsel. In this case, I think it's a good illustration. If in this case, given the explanation for why, in this case, counsel explained why he did not call each of the witnesses that he was allegedly ineffective for not calling. And I would note that although there is a strong presumption of trial strategy, we don't even need to rely on the presumption here. Counsel explained that each of these decisions was deliberate and strategic, and that alone showed that there was no possible neglect in this case. That note that the most recent Illinois Supreme Court case dealing with the preliminary crankle inquiry, that was Jackson, 2020 decision, right? They held that where a defense attorney explained the reasons for not calling witnesses and showed that the decision was strategic, they held that because the allegations related to trial strategy, that it quote, could not serve as a basis of a crankle claim. And that was the end of the matter. So that alone showed that it was not necessary to appoint crankle counsel in this case. Now, regarding some of the more specific allegations, regarding the various witnesses, the counsel did explain clearly why he did not call these various witnesses. A couple of them he explained would have testified about the victim's emotional state that was Malik Terry and Antoine Connor. Counsel did not feel that that was relevant to the defense. Some of them counsel explained would have been, he thought would have been impeached with prior inconsistent statements and their criminal background was Percy Freeman and Terry Copening. And I would note in Freeman's case, counsel explained he was particularly concerned about impeachment because Freeman was actually convicted also of Anderson's murder. Micah Hatcher likewise had a criminal background and counsel believed that he would likely assert his Fifth Amendment rights preventing his testimony. And here I have to disagree with counsel. I don't think there's anything speculative about counsel's conclusion that Hatcher would likely plead the fifth. Hatcher is seen on the video, the actual video of the shooting, that's a state's exhibit 14II. He was the gentleman in the gray hooded sweatshirt. He was one of the assailants who punched and attacked the victim. It's, so I don't find it at all speculative to conclude that he would likely plead the fifth. I mean, his testimony, any testimony likely could have incriminated himself. Counsel, what about the affidavit that was attached to the pro se motion and the conflicting, essentially conflicting testimony or statements by the counsel and Mr. Wilson? Certainly. So I would note initially that although it was entitled as an affidavit and the parties sort of used that title, the title was a bit of a misnomer. It was not really an affidavit. It was not a sworn statement. It wasn't under penalty of perjury. It wasn't certified. It was just a written statement purportedly from Wilson stating generally that defendant's trial counsel had never spoken to him or had never reached out to him, I believe was the language. And that to his knowledge, there was no plan to fight with or shoot the victim. And generally stating that he would have testified as to that. So first the trial court, trial counsel did testify that he did in fact, speak to Mr. Wilson. The trial court credited that testimony. And there's no reason to think that an unsworn statement generally suggesting otherwise would have made a difference or should have made a difference. And regardless, defendant cannot in any case show prejudice from the decision to not call Wilson because nothing suggested that Wilson would have had anything helpful to say. I mean, as he said in the affidavit statement, whatever you wanna call it, as he said in that, he was not there for the actual shooting. He did not witness the actual shooting or the victim's purported attack on Percy Freeman, which defendant's theory was that that was what precipitated the violence. He was not there for any of that. So there's little reason to think that could have helped. Does the inconsistency though point that perhaps counsel should have been appointed at this stage? I mean, because there's some inconsistencies? I don't think so in and of itself. I guess there's no authority to the proposition that it does. And in any event, if an unsworn statement from a witness just generally claiming that they have unspecified helpful things to testify about and that counsel never talked to them, if that was enough to necessitate or mandate the appointment of Krenkel counsel, then it would be very easy for anyone in any case to have Krenkel counsel appointed. Here, the trial court did not manifestly err in concluding that there was no possible neglect where counsel explained his decisions not to call each of these witnesses. And that showed that there was not possible neglect. And I will just briefly touch on a couple of his other allegations of ineffective assistance of counsel. The allegation that counsel was ineffective for not bringing a sleeping juror to the court's attention, that can be dispensed with pretty simply. There was no sleeping juror. Counsel explained that he did not believe the juror was sleeping. They appeared to him to be paying attention. The trial court also did not recall a sleeping juror. So there was nothing there for the counsel to do. And there was also, defendant also did not show possible neglect with his allocation that counsel was ineffective for not impeaching Jessica Driver, the victim's girlfriend, with her prior statement that she told police that the victim had a gun on the day he was shot. As counsel explained, he did not feel that that was necessary because the video showed that the victim did in fact have a gun. And he was right. That's States Exhibit 14-II at 1.44 PM in eight seconds. You can clearly see it for briefly, but clearly as the victim is, as Percy Freeman is standing up after he fell down on top of the victim, you can see that what he took from the victim's body was a gun. And of course, counsel also elicited on cross-examination that the victim's, that a loaded magazine of ammunition was found on the victim's body, which also showed that it was unnecessary to elicit further information that the evidence that the victim was armed that day. Mr. Williams, you keep using the statement, possible neglect. I think the standard is objectively unreasonable, which is lesser than neglect, I think. So I think it's both. So the Strickland standard is of course, whether it was objectively unreasonable and whether if there was division performance, whether there's a reasonable probability of a different result, but for that, at the preliminary Krenkel stage, I do believe counsel is correct that in order to show that it was necessary to appoint conflict counsel to further develop his claims, the standard is whether there was, he showed possible neglect. And the Illinois Supreme Court- And what does that mean? Well, among other things it means is that if all of the claims only relate to matters of trial strategy, then that's not possible neglect as the Illinois Supreme Court has held. So in this case, and I would note that this is not just a case of whether his allegations may have related to a trial strategy. The trial court here did not, as they did in some of the appellate court cases that defendant sides, Maya, Peabody, the trial court did not merely rely on the general proposition that generally the decision whether to call a witness is strategic. Here, the trial court asked counsel about each of the witnesses and confirmed that it was in fact a deliberate strategic decision not to call them. So that did not show possible neglect of the case. And at minimum, defendant cannot show that a trial court manifestly erred in concluding otherwise. I see my time is about up. So unless there are any further questions, I'm happy to answer any. I would ask the court to affirm. Thank you. Other questions, Justice Cates? No, thank you.  No. All right, thank you. Thank you, your honors. Mr. Malin, rebuttal? Thank you very much, your honors, counsel. Again, I think your honors touched on an important point is at this stage, we're just asking for appointment of new counsel, trial counsel who represented my client he's not gonna admit his ineffectiveness. It would be a conflict for him to do so. And so the relief we're asking for is not at this stage a reversal of his conviction. It's just an evidentiary hearing with new counsel to flush out possible witnesses that would have benefited my client's defense. And I would actually like to touch on, I didn't get into my opening on the sleeping juror issue. There was a factual dispute and trial counsel actually admitted at the preliminary Frankel hearing that he observed a juror closing his eyes. And there was allegations that a bailiff had to wake the juror up. And at this stage, we don't know what portions of testimony, what portions of evidence that this juror might've missed. These are the exact sort of factual matters that should be flushed out at a further Frankel proceeding. So again, I would just like, I'm sorry. Excuse me, Mr. Mellon, didn't the court indicate that it did not see a sleeping juror? Well, the juror, I mean, the court was probably focused on the witnesses, probably focused. How would we ever, in an evidentiary hearing where the court is presiding and it's the same judge who was presiding over the hearing, how are we ever gonna reverse that in an evidentiary hearing? Well, in evidentiary hearing, the bailiff could appear and indicate that a juror was sleeping during trial. Then shouldn't the defendant have just provided the affidavit of the bailiff in this preliminary Frankel issue? I don't know if, I think that's why my client should be appointed counsel. My client's a pro se defendant and is he gonna be capable of obtaining an affidavit from a bailiff? I think that's why, I think that shows the importance of why at this stage, he should get the assistance of counsel. But I mean, it's just as Kate's pointed out, in light of the fact the prosecutor said that the juror was not sleeping, the court said they did not see a juror sleeping. So we have two on one side saying, we didn't see that going on, that wasn't in this trial. It seemed like at a minimum, you'd have to have an affidavit from the bailiff to even get to the next part. Merely asserting, I think the bailiff might've said something or might've seen something that doesn't seem to me to be sufficient. I think because trial counsel at the Frankel inquiry indicated that he did see the juror closing his eyes. And that's some corroboration. And I think it's just, we need further factual finding just to make sure my client was not deprived of his right to a fair and impartial jury. A jury that's awake during all of trial and hearing all the evidence. Thank you. Anything else you wish to say, Mr. Mallon? No, your honors. Thank you very much for hearing us today. And if you have no further questions, we submit this case for your consideration. All right, thank you. We appreciate your arguments. Thank you very much. We'll consider those in light of the briefs that file. We will also consider the briefs. We'll take the matter on advisement and issue a decision in due course.